CHRISTOPHER W. DECKER, CA Bar No. 229426
christopher.decker@ogletree.com
VI APPLEN, CA Bar No. 273623
vi.applen@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:     213-239-9800
Facsimile:     213-239-9045

Attorneys for Defendant
SIEMENS INDUSTRY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chanielle Enomoto, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Siemens Industry, Inc.; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT SIEMENS INDUSTRY, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Pendency; Declarations of Ariel Kumpinsky, Caren Spiecker and Christopher Decker in Support of Removal]<br><br>Complaint Filed:  May 26, 2022<br>Trial Date:         None<br>District Judge:    Hon. _____ |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CHANIELLE ENOMOTO AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Siemens Industry, Inc. ("Defendant"), by and through the undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446.  In support of such removal, Defendant states as follows:

## I.    BACKGROUND

1.    On or about May 26, 2022, plaintiff Chanielle Enomoto ("Plaintiff") commenced this action by filing an unverified Class Action Complaint in the Superior Court of California, County of Alameda, captioned *Chanielle Enomoto v. Siemens Industry, Inc.*, and bearing case number 22CV011810.  (True and correct copies of the Summons, Complaint, and all other documents served on Defendant in this action are attached as **Exhibit A** to this Notice of Removal ("Notice").)

2.    On June 2, 2022, Plaintiff served Defendant with the Summons, Complaint, and other case-initiating documents from the court.  (Declaration of Christopher W. Decker, filed concurrently herewith, ("Decker Decl."), ¶ 2.)

3.    The Complaint asserts claims for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Reimburse All Business Expenses; (7) Failure to Timely Pay All Wages and Commissions Due Upon Separation of Employment; (8) Violation of Business and Professions Code §§ 17200, *et seq.*; (9) Enforcement of Labor Code § 2698 *et seq.*

4.    As set out more fully below, based on the allegations of the Complaint and other evidence collected by Defendant, this Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d) and hence the action may be removed by Defendant pursuant to 28 U.S.C. § 1441.  Original jurisdiction exists here because there are at least

100 class members in all proposed plaintiff classes, the combined claims of all class members exceed $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a different state than at least one class member.

## II.   DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

### A.   Timeliness

5.    The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).  Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal.  The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class.  Nor does the Complaint allege any claim under federal law.  Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information.  (Decker Decl. ¶ 4.)  Accordingly, the time to remove this action has not yet begun.  Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable.  *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).  As set forth below, Defendant has only recently discovered such evidence after an arduous collection and review of all records of potential class members and a complex analysis of the estimated damages allocated to each cause of action.  Therefore, Defendant is timely removing this case based on that discovery.

6.    Even if it could be determined from the four corners of the Complaint that this action is removable, this Notice of Removal would still be timely.  The Complaint and Summons were served on Defendant on June 2, 2022.  (Decker Decl. ¶ 2.)  As such, the time to remove could not expire, at the earliest, until July 5, 2022, the first court day which is 30 days after service of the Summons and Complaint.  This Notice is therefore timely, as it was filed before that date.

**B.** <u>**Venue**</u>

7.    The Superior Court of California for the County of Alameda is located within the Northern District of California.  Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. § 84(d) because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

**C.** <u>**Procedural Requirements**</u>

8.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to the Declaration of Christopher Decker.

9.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County of Alameda and with the Clerk of the Northern District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

**III.    <u>THE CASE IS REMOVABLE PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA")</u>**

10.    As set forth below, Plaintiff's claims as alleged in the Complaint are removable under 28 U.S.C. § 1332(d).

11.    Under CAFA, the Federal District Court has jurisdiction if:

(a)    There are at least 100 class members in all proposed plaintiff classes in the aggregate; and

(b)    The combined claims of all class members exceed $5 million exclusive of interest and costs.

12.    Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons…").

13.    In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 132 S.Ct. 547 (2014), the U.S. Supreme Court provided significant clarification to the standards applicable to notices of removal in CAFA cases, establishing a much more liberal standard in favor of removing

defendants.  In *Dart Cherokee,* the U.S. Supreme Court held that a removal must only contain "a short and plain statement of the grounds for removal." *Id.* at 553 (quoting 28 U.S.C. § 1446(a)). The Court noted that this same language is used for the pleading standard in Rule 8(a) of the Federal Rules of Civil Procedure.  *Id.*  The use of this language in the removal statute was intentional—clearly indicating that courts should apply the same liberal pleading standards to notices of removal as they should to plaintiffs' complaints and other pleadings.  *Id.*  The Court further held that a removing defendant need not submit evidence with its pleading that establishes that the elements of federal subject matter jurisdiction are met.  *Id.* at 552-53.  Only if the court or another party challenges jurisdiction should the court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met.  *Id.* at 553-54.  The Court summarized its holding as follows:  "[i]n sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554.  Also, there is no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court."  *Id.*

      **A.**    <u>**There are at Least 100 Class Members in all Proposed Plaintiff Classes.**</u>

14.    In this action, Plaintiff seeks to represent a proposed class defined as follows:  "All current and former commissioned employees classified by Defendants as exempt who worked for Defendants in the State of California from four years plus 179 days before the filing of this complaint to the date of trial." (Compl. ¶ 22.)

15.    Plaintiff also seeks to represent a waiting time subclass defined as follows: All members of the Class who separated their employment from Defendants from three years plus 179 days before the filing of this complaint to the date of trial." (Compl. ¶ 23.)

16.    Plaintiff alleges in the Complaint that "the Class is estimated to be greater than 100 individuals." (Compl. ¶ 26(a).)  Thus, the first requirement for CAFA jurisdiction is satisfied.

17.    Based on the above, there are more than 100 class members in all proposed Plaintiff classes.

**B.     The Combined Claims of All Class Members Exceed $5 Million Exclusive of Interest and Costs.**

18.    Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, the aggregate value of the claims of all proposed plaintiffs classes exceeds the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act.  The $5 million jurisdictional minimum may be based on aggregation of the claims of all potential class members.  28 U.S.C. § 1132(d)(6).

19.    With respect to CAFA's $5,000,000 threshold for the "amount in controversy," it is not the same as the amount ultimately recovered.  *Lara v. Trimac Transp. Servs. Inc.*, No. 3:19-cv-04592-JCS, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010).  Rather, in assessing the amount in controversy, a court must "assume that all the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiffs on all claims made in the complaint."  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what the defendant will actually owe.  *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).  In other words, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008).  "The amount in controversy is determined by the universe of what the Plaintiff puts at-issue in the complaint."  *Schiller v. David's Bridal, Inc.*, No. 1-10-cv-00616 AWI SKO, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010).

20.    To establish the amount in controversy, a defendant "need not concede liability for the entire amount," and it is error for a district court to require such a showing.  *Lewis*, *supra*, 627 F.3d at 400; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint," and that the court may also consider summary-judgment-type evidence relevant to the amount in

controversy at the time of removal) (citations omitted); *see also Angus v. Shiley, Inc*., 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.").

21.     Furthermore, a defendant's assumptions in an amount in controversy calculation do not require actual proof, but rather it need only show "reasonable grounds" for the assumptions. *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 927 (9th Cir. 2019).  Defendant's estimate of the amount-in-controversy, as set forth below, is conservative in nature as it relies on conservative assumptions as to the frequency of the wage statement, overtime pay, meal period and rest break violations alleged in the Complaint.[1]

22.     As is shown below, the evidence shows that Plaintiff's causes of action place more than $5 million in controversy.

**1.     Plaintiff's Second Cause of Action for Failure to Pay Overtime Wages Places at least $2,746,495.45 in Controversy.**

23.     Plaintiff's Second Cause of Action seeks unpaid overtime compensation.  (Compl. ¶¶ 33-43.)

24.     Plaintiff alleges that "Defendants have engaged in a systematic pattern of wage and hour violations" and "maintained … unlawful practices and policies, in violation of state wage and hour laws." (Complaint ¶¶ 3 and 5.)  Plaintiff further alleges that "Defendants failed to pay Plaintiff and the Class Members overtime wages for all overtime hours worked when Plaintiff and Class Members worked in excess of eight (8) hours in a day, forty (40) hours in a week and/or for a seventh consecutive day of work in a workweek, or when Plaintiff and Class Members worked in excess of twelve (12) hours in a day and/or in excess of eight (8) hours on the seventh day of works in a work week.  Plaintiff and Class members frequently had to engage in overtime work in order to keep up with the work required by Defendant." (Compl. ¶ 40.)  Plaintiff and Class Members are

---

[1] Defendant reserves the right to present additional information regarding the amount placed in controversy by Plaintiff's causes of action in response to any Motion to Remand or Order to Show Cause challenging the propriety of this removal.

DEFENDANT SIEMENS INDUSTRY, INC.'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

"entitled to recover their unpaid overtime and double time compensation as well as interest, costs, and attorneys' fees." (Compl. ¶ 43.)

25.     The statute of limitations for a claim seeking wages for failure to pay overtime wage for all hours worked is three years.  Cal. Lab. Code § 203; Cal. Civ. Proc. § 338.  This statute of limitations is extended to four years where, as here, the Complaint includes a claim for Unfair Business Practices under Bus. & Prof. Code § 17200.  Accordingly, if the allegations of the Complaint are true, Defendant owes additional remuneration to each commissioned employee employed in an exempt position in California who was not paid overtime wages for all overtime hours worked.  Defendant would owe additional remuneration for all such time from May 26, 2018 to the present.

26.     The Complaint does not allege the number of hours for which additional remuneration is due, the amount of the underpayment, or how that amount could be determined. However, given the allegations that "Defendants have engaged in a systematic pattern of wage and hour violations," (Compl. ¶¶ 3 & 5) and that "Plaintiff and Class members frequently had to engage in overtime work,"  (Compl. ¶ 40) it is reasonable to assume for purposes of estimating the amount in controversy that each putative class member would be entitled to at least one hour of unpaid overtime per week.  *See, e.g., Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 U.S. Dist. LEXIS 130521, at *32 (C.D. Cal. Sep. 28, 2015) (one hour of unpaid overtime per week "reasonable" based on plaintiffs' allegations that defendant "regularly" miscalculated overtime); *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892 (C.D. Cal. April 14, 2021) ("[Plaintiff's] Complaint alleges that [defendant] has 'engaged in a pattern and practice' of wage abuse by, among other things, 'failing to pay them for all regular and/or overtime wages earned,' [citation]; therefore, an assumption that each putative class member worked one hour of unpaid overtime per workweek is reasonable.")  *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115 (C.D. Cal. Feb. 5, 2018) at *4 ("an assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation"); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014).

27.     Ariel Kumpinsky, an economist and a Director of The Claro Group, LLC analyzed the business records of Defendant and for the 276 employees who were paid commissions in California from May 26, 2018 to April 17, 2022 ("putative class members"), and he calculated the amount that would be owed to him or her if one assumed that each putative class member were owed one hour of overtime wages for every 40 non-overtime hours worked.  (Declaration of Ariel Kumpinsky, filed concurrently herewith, ("Kumpinsky Decl."), ¶¶ 9-13.)  Mr. Kumpinsky analyzed the Company's business records and determined the potential total unpaid overtime owed. (Kumpinsky Decl., ¶10.)  Mr. Kumpinsky also analyzed the Company's business records and determined that the average hourly base rate of pay for each putative class member.  (Kumpinsky Decl., ¶11.)  If each employee were entitled to an additional hour of overtime compensation for every 40 hours worked, the 276 putative class members would be entitled, collectively, to 34,441 overtime hours and at least $2,746,495.45 in unpaid overtime wages.  (Kumpinsky Decl., ¶13.)

28.     Thus, if Plaintiff's allegations in the Complaint are true, Plaintiff's Second Cause of Action for failure to pay overtime wages places at least $2,746,495.45 in controversy.

### 2.     Plaintiff's Third Cause of Action for Failure to Provide Meal Periods Places at Least $1,830,996.67 in Controversy.

29.     Plaintiff's Third Cause of Action seeks premium wages for Defendant's alleged failure to provide meal periods as required by law.  (Complaint ¶¶ 44-52.)

30.     Plaintiff alleges that "Defendants have engaged in a systematic pattern of wage and hour violations" and "maintained … unlawful practices and policies, in violation of state wage and hour laws."  (Complaint ¶¶ 3 and 5.)  Plaintiff further alleges that "Plaintiff and class members did not receive timely, compliant meal periods for each five hours worked per day.  Specifically, Plaintiff, and class members were regularly required to consistently work through their meal periods, regularly had their meal periods interrupted, were provided with meal periods that were often less than thirty minutes, and/or regularly provided with meal periods after the end of the fifth hour of their shifts." (Complaint ¶ 49.)

31.     Plaintiff further alleges that, "[a]t all relevant times, Defendants failed to pay Plaintiff and class members all meal period premiums due for meal period violations pursuant to Labor Code §226.7(b) and section 11 of the applicable IWV Wage Order." (Complaint ¶ 51.)

32.     The statute of limitations for a claim seeking premium wages for failure to provide legally required meal periods and rest breaks is three years. Cal. Lab. Code §§ 203 and 338. This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Competition to include Unlawful Business Practices under Bus. & Prof. Code § 17200. Accordingly, if the allegations of the Complaint are true, Defendant owes each commissioned employee in California an additional hour of pay for each workday between May 26, 2018 and the present that such individual either did not receive a legally compliant meal break. The Complaint does not allege the number of meal periods not provided to Plaintiff or putative class members for which premium pay is due.

33.     Where a class action complaint alleges that employees were "regularly required to work" during their meal periods, courts have concluded that it was reasonable to assume a 20% violation rate, or one meal and one rest break violation per week, for purposes of calculating the amount-in-controversy. *Salazar v. PODS Enters., LLC*, No. EDCV 19-260-MWF (KKx), 2019 WL 2023726, at **1-3 (C.D. Cal. May 8, 2019); *see also Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks."); *see also Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *4 (C.D. Cal. Oct. 26, 2017) (approving assumed violation rate of one missed meal period and one missed rest period where plaintiff alleged "consistent" violations). Plaintiff's allegations of a "systematic pattern" of meal period violations further support this assumption. *Jasso v. Money Mart Express, Inc.*, 2012 U.S. Dist. LEXIS 27215, *17 (holding that given the allegations of a "uniform policy and scheme" one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy); *see also Garza v. Brinderson Constructors, Inc.*, 178 F. Supp.

3d 906, 911 (N.D. Cal. 2016) (holding that a weekly rate was a reasonable calculation when the plaintiff alleged a "policy or practice" of meal and rest break violations).

34.     Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, Plaintiff and putative class members place at least $1,830,996.67 in controversy relating to purported meal period violations.  (Kumpinsky Decl., ¶¶ 14-16.)  Ariel Kumpinsky, an economist and a Director of The Claro Group, LLC analyzed the business records of Defendant and for the 276 putative class members, and he calculated the amount that would be owed to him or her if one assumed that, for every 40 hours worked, he/she did not receive one legally-compliant meal period.  (Kumpinsky Decl., ¶ 14.)  Mr. Kumpinsky analyzed the Company's business records and determined that the average hourly base rate of pay for each putative class member. (Kumpinsky Decl., ¶ 11.)  Mr. Kumpinsky then calculated the additional wages owed if each employee did not receive one legally-compliant meal period for every 40 hours worked. (Kumpinsky Decl., ¶ 14.)  If each were entitled to an additional hour of overtime compensation for every 40 hours worked, the 276 putative class members would be entitled, collectively, to at least $1,830,996.67 in unpaid wages.  (Kumpinsky Decl., ¶ 16.)

35.     Thus, Plaintiff's Third Cause of Action places at least $1,830,996.67 in controversy.

### 3.     Plaintiff's Fourth Cause of Action for Failure to Provide Rest Periods Places at Least $1,830,996.67 in Controversy.

36.     Plaintiff's Fourth Cause of Action seeks premium wages for Defendants' alleged failure to provide rest breaks as required by law.  (Complaint ¶¶ 53-59.)

37.     Plaintiff alleges that "Defendants have engaged in a systematic pattern of wage and hour violations" and "maintained … unlawful practices and policies, in violation of state wage and hour laws."  (Complaint ¶¶ 3 and 5.)  Plaintiff further alleges that "[d]uring the relevant time period, Plaintiff and class members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked."  (Complaint ¶ 56.)

38.     Plaintiff further alleges that, "[a]t all relevant times, Defendant failed to pay Plaintiff and class members all rest period premiums due for rest period violations pursuant to Labor Code §226.7(b) and section 12 of the applicable IWC Wage Order."  (Complaint ¶ 58.)

39.     The statute of limitations for a claim seeking premium wages for failure to provide legally required rest breaks is three years.  Cal. Lab. Code §§ 203 and 338.  This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Competition to include Unlawful Business Practices under California Business and Professions Code section 17200.  Accordingly, if the allegations of the Complaint are true, Defendant owes each commissioned employee in California an additional hour of pay for each work day between May 26, 2018 and the present that such individual did not receive a legally-compliant rest break. The Complaint does not allege the number of rest breaks not provided to Plaintiff or putative class members for which premium pay is due.

40.     Where a class action complaint alleging failure to provide meal periods (and/or rest breaks) does not provide this detail, courts in the Ninth Circuit and in this district have held that it is reasonable to assume a 25-50% violation rate based on "policy and practice."  *See e.g. Olson v. Becton, Dickinson and Company*, No. 19-CV-865-MMA, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (reasonable assumption of 25% violation rate where plaintiff alleged that "employees were required to work without meal periods or rest breaks '[a]s a pattern and practice') (alteration in original)).  Here, Defendant takes a conservative approach assuming a 20% violation rate, or one missed rest period per week worked.  *See e.g., Gipson v. Champion Home Builders, Inc.*, No. 1:20-CV-00392-DAD-SKO, 2020 WL 4048503, at *6 (E.D. Cal. July 20, 2020) (finding that a 20% violation rate for meal and rest periods was reasonable where the complaint alleged a "policy and practice" of violations).  Further, where a class action complaint alleging a "pattern and practice" of meal period violations or that employees were "regularly required to work" during their meal periods, courts have concluded that based on these allegations, it was reasonable to assume a 20% violation rate, or one meal and one rest break violation per week, for purposes of calculating the amount-in-controversy.  *Salazar v. PODS Enters., LLC*, No. EDCV 19-260-MWF (KKx), 2019 WL 2023726, at **1-3 (C.D. Cal. May 8, 2019).

41.     Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, Plaintiff and putative class members place at least $1,830,996.67 in controversy relating to purported rest period violations.  (Kumpinsky Decl., ¶¶ 14-16.)  Ariel Kumpinsky, an

economist and a Director of The Claro Group, LLC analyzed the business records of Defendant and for the 276 putative class members, and he calculated the amount that would be owed to him or her if one assumed that, for every 40 hours worked, he/she did not receive one legally-compliant rest period.  (Kumpinsky Decl., ¶ 16.)  Mr. Kumpinsky analyzed the Company's business records and determined that the average hourly base rate of pay for each putative class member.  (Kumpinsky Decl., ¶ 11.)  Mr. Kumpinsky then calculated the additional wages owed if each employee did not receive one legally-compliant rest period for every 40 hours worked.  (Kumpinsky Decl., ¶ 15.)  If each were entitled to an additional hour of overtime compensation for every 40 hours worked, the 276 putative class members would be entitled, collectively, to at least $1,830,996.67 in unpaid wages.  (Kumpinsky Decl., ¶ 16.)

42.     Thus, Plaintiff's Fourth Cause of Action places at least $1,830,996.67 in controversy.

**4.     <u>Plaintiff's Fifth Cause of Action for Failure to Provide Accurate Written Wage Statements Places at least $381,250.00 in Controversy.</u>**

43.     Plaintiff's Fifth Cause of Action seeks penalties under California Labor Code section 226(a) for failure to provide accurate written wage statements.  (Complaint ¶¶ 60-65.)  The applicable penalty is fifty dollars for the initial pay period in which a violation occurs, and one hundred dollars for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars.  Cal. Lab. Code § 226(e).  Plaintiff alleges that "Defendants knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and class members."  (Complaint ¶ 62.)  In particular, Plaintiff alleges that the wage statements issued to Plaintiff and class members failed to comply with Labor Code section 226(a)(1) due to deficiencies that include: "among other things, failure to correctly state the gross and net wages earned and the number of hours worked at each hourly rate by Plaintiff and class members."  (*Id.*)

44.     Given Plaintiff's Fifth Cause of Action incorporates by reference Plaintiff's Second Cause of Action (unpaid overtime), Third Cause of Action (missed meal break violations) and Fourth Cause of Action (missed rest break violations), the Court can reasonably assume that the

alleged wage statement deficiencies also include derivative liability based on meal break violations and rest break violations.  (Complaint ¶ 60.)

45.     As noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week, and worked at least one hour each week for which overtime wages were due but not paid.  On those reasonable assumptions, each putative class member would be owed at least one meal period premium, one rest break premium, and one hour of overtime wages for each week worked.  As these wages were not paid to them, they did not appear on the wage statement issued to them.  Nor did the hour of overtime which was worked but not paid appear on the wage statement.  Accordingly, if Plaintiff's allegations and legal theories are correct, each wage statement issued to putative class members during the relevant time period did not accurately state all gross and net wages earned, or all hours worked.

46.     The Labor Code provides for a penalty of $50.00 for the initial pay period in which a violation of section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of section 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member.  Labor Code § 226(e).

47.     The applicable statute of limitations to recover penalties under California Labor Code section 226(e) is one year.  Cal. Civ. Code § 340(a).  Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any commissioned employee of Defendant classified as exempt in California on or after May 26, 2021 through the present is entitled to penalties under Labor Code section 226(e) for each wage statement issued during that time period. Defendant paid wages to its California employees on a biweekly basis through December 31, 2021 and on a semi-monthly schedule during 2022.  (Kumpinsky Decl., ¶ 19.)  Mr. Kumpinsky reviewed Defendant's records, to count the number of wage statement issued to putative class members who worked for Defendant between May 26, 2021 and April 17, 2022.  (*Id.*)  He then estimated the amount that would be due to these employees if the wage statements issued to them during this period did not comply with California law by (i) assigning $50 to each employee for the first wage statement issued to that employee between May 26, 2021 and April 17, 2022, and (ii) assigning

$100 for each subsequent wage statement during that time period, up to a maximum of $4,000 per Putative Class Member.  (*Id.*)  Employing that methodology, he calculated that $381,250.00 would be due to these employees, collectively, if the wage statements issued to them failed to comply with California law.  (*Id.*)

48.     Accordingly, given the inputs above, Plaintiff and putative class members would be entitled to recover at least $381,250.00.  (*Id.*)

49.     Thus, Plaintiff's Fifth Cause of Action places at least $381,250.00 in controversy.

**5.     <u>Plaintiff's Seventh Cause of Action for Waiting Time Penalties Places at least $1,026,678.85 in Controversy.</u>**

50.     Plaintiff's Seventh Cause of Action seeks penalties under California Labor Code sections 201-203 for failure to timely pay all final wages.  (Complaint ¶¶ 76-81.)  Section 203 provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation wages.

51.     Plaintiff alleges that Defendant during the relevant time period "failed to pay Plaintiff and Waiting Time Subclass members all their earned wages upon termination including, but not limited to, proper minimum wage and overtime compensation, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ."  (Complaint ¶ 78.)

52.     Plaintiff also alleges that "Plaintiff and Waiting Time Subclass members are entitled to recover from Defendants the statutory penalty which is defined as Plaintiff and Waiting Time Subclass members' regular daily wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum pursuant to Labor Code § 203."  (Complaint ¶ 81.)

53.     It is reasonable to assume that every employee terminated during the statutory period would have experienced at least one wage/hour violation—and therefore would not have been paid certain wages due— where plaintiffs allege a "laundry list" of potential wage/hour violations, as Plaintiff has done here.  *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872 at *4 (C.D. Cal. Sept. 24, 2015); *Byrd v. Masonite Corp.*, 2016 WL 2593912 at **2-3 (C.D. Cal. May

5, 2016); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400 at *4 (C.D. Cal. June 22, 2017). As in *Byrd*, Plaintiff here has alleged "a broad, uniform policy of multiple Labor Code violations," 2016 WL 2593912 at *3, and "fails to assert any different rate of violation or submit evidence indicating a different rate of violation," *Id.*  And similar to *Moppin*, Plaintiff alleges that "Defendants have engaged in a systematic pattern of wage and hour violations" and "maintained … unlawful practices and policies, in violation of state wage and hour laws."  (Complaint ¶¶ 3 and 5.) In *Torrez*, the Court concluded that the Complaint alleged a 100% violation rate for waiting time penalties by alleging "during the relevant time period, [defendant] intentionally and willfully failed to pay Plaintiffs and the other class members who are no longer employed by [defendant] their wages, earned and unpaid, within seventy-two hours of their leaving [defendant's] employ."  2017 WL 2713400 at *4.  Similarly here, Plaintiff alleges that "during the relevant time period, Defendants willfully failed to pay Plaintiff and Waiting Time Subclass members all their earned wages upon termination … either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ."  (Complaint ¶ 78.)

54.     Moreover, as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member is owed at least one hour of unpaid overtime wages.  Hence, each putative class member who was terminated did not receive all wages due to him or her at the time of termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (Cal. Ct. App. 1998) (a "proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."); *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' 30 day waiting time penalties calculation was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" putative class members to work without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Giannini v. Northwest Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 153196, at *4

(N.D. Cal. Apr. 30, 2012) (determining defendant's assumption of maximum waiting time penalties were reasonable "based on the allegations of Plaintiff's complaint, which suggest that all class members were denied at least some form of compensation" during their employment).

55.     Also as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week, and worked one hour of unpaid overtime.  On those reasonable assumptions, each putative class member would be owed at least one meal period premium, one rest break premium, and one hour of overtime wages for each week worked.  Hence, for this additional reason, each putative class member who was terminated did not receive all wages due to him or her at the time of termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203.  *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for defendant to assume, in light of the allegations in the complaint that putative class members missed meal periods, that "all members of the proposed class … would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty"); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("[a plaintiff's] allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties.") (collecting cases); *Mariscal*, 2021 WL 1400892 at * 3 ("[I]t is appropriate to assume each one of the 147 terminated class members was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages.")

56.     The applicable statute of limitations for a claim under California Labor Code section 203 is three years.  Cal. Lab. Code § 203; Cal. Civ. Proc. § 338.  If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendant owes the maximum 30 days of continuation wages to each putative class member who terminated employment between May 26, 2019 and the present.  Mr. Kumpinsky analyzed the Company's business records and determined that there were 88 employees terminated on or after May 26, 2019.  (Kumpinsky Decl., ¶ 17.) If the allegations of

1   the Complaint and Plaintiff's legal theories are correct, Defendants owe thirty (30) days of

2   continuation wages to each of these 88 individuals.

3           57.     Mr. Kumpinsky analyzed the Company's records and calculated the amount that

4   would be due to these 88 employees if each were owed an additional 240 hours of pay at that

5   individual's final base hourly rate of pay at the time of his/her termination.  (Kumpinsky Decl., ¶

6   17.)  Using this methodology, he calculated that these employees, collectively, would be owed at

7   least an additional $1,026,678.85, if each were entitled to an additional 30 days' wages, on the

8   reasonable assumption that each typically worked 8 hours per day.  (*Id*.)

9           58.     Thus, if Plaintiff's allegations in the Complaint are true, Plaintiff's Sixth Cause of

10  Action for waiting time penalties places at least $1,026,678.85 in controversy.

11                  **6.      Plaintiff's Prayer for Attorneys' Fees Places an Additional**
                           **$1,782,797.77 in Controversy.**
12

13          59.     Plaintiff seeks attorneys' fees on behalf of the putative class for their work

14  prosecuting their first, second, third, fourth, fifth, sixth, seventh, eighth, tenth, and eleventh causes

15  of action.  (Complaint, Prayer for Relief, ¶¶ 6, 31, 43, 64, 69, 73, 74, 88, 96.)  Attorneys' fees are

16  properly included in the amount in controversy.  *See Guglielmino v. McKee Foods Corp*., 506 F.3d

17  696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount

18  in controversy for CAFA jurisdiction purposes); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d

19  1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount

20  of controversy where an underlying statute authorizes an award of attorneys' fees).

21          60.     Although there is no *per se* rule that the amount of attorneys' fees in controversy in

22  class actions is 25 percent of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC*,

23  899 F.3d 785, 796 (9th Cir. 2018), courts routinely grant attorneys' fees awards that range from

24  25% to 33% of the settlement or verdict amount.  *See, e.g., Hanlon v. Chrysler Corp*., 150 F.3d

25  1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark

26  award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D.

27  Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee

28  award ranged between 25% and more than 40%).

61.     Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy.  "[T]he benchmark need only be adjusted when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Cortez v. United Natural Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, *7 (N.D. Cal. Feb. 27, 2019) (internal quotation marks and citation omitted); *see also Ramirez v. Benihana National Corp.*, No. 3:18-cv-05575-MMC, 2019 WL 131843, *2 (N.D. Cal. Jan. 8, 2019) (applying 25% benchmark post-*Fritsch* because no factors "reflect a departure from such benchmark is warranted").  No such adjustment is needed in a "typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate." *Cortez,* 2019 WL 955001 at *7.  Indeed, "[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate." *Garcia v. Lifetime Brands, Inc.*, No. EDCV 15-1924-JLS (SPx), 2016 WL 81473, at *4, n. 2 (C.D. Cal. Jan. 7, 2016); *accord Ramos v. Schenker, Inc.*, No. 5:18- cv-01551-JLS-KK, 2018 WL 5779978, *3 (C.D. Cal. Nov. 1, 2018).

62.     Accordingly, assuming the low-end 25% figure reflected in the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid wages and penalties sought, which, as detailed above, amount to $7,816,418.23 [$2,746,495.45 + $1,830,996.97 + $1,830,996.97 + $381,250.00 + $1,026,678.85 = $7,816,418.23].  Plaintiff's prayer for attorney's fees therefore adds at least $1,954,104.56 (25% of $7,816,418.23) to the amount-in-controversy.

63.     This brings the total amount-in-controversy to $9,770,522.79 $7,816,418.23 + $1,954,104.56), easily exceeding the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act.  This calculation is conservative, as it does not include the amount placed in controversy by Plaintiff's First, Sixth, Eighth and Ninth Causes of Action (which cannot be calculated with reasonable certainty at this time), and, for the other causes of action,

relies on conservative estimates and assumptions where sufficient data is presently lacking to calculate the amount in controversy with greater precision.[2]

### C.   Any Class Member Is A Citizen Of A Different State Than Defendant

64.   For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and one defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

65.   Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  A corporation's headquarters is presumptively the location of its "principal place of business…."  *Hertz v. Friend*, 130 S.Ct. 1181, 1192 (2010) ("[I]n practice [a company's principal place of business] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, i.e., the 'nerve center'"….).

66.   At the time this action commenced in state court, Defendant was and still is, incorporated in the State of Gerogia.  (Declaration of Caren Spiecker, filed concurrently herewith, ("Spieker Decl.") ¶ 3.)  Its principal place of business at the time of the filing of the Complaint was, and still is, in the State of Georgia.  (Spieker Decl. ¶¶ 4-5.)  Thus, for the purposes of federal diversity jurisdiction, Defendant is a citizen of the State of Georgia.  As such, Defendant is not a citizen of the State of California.

67.   At all relevant times during Plaintiff's employment with Defendant, Plaintiff maintained a primary residence address in California.  (Spieker Decl. ¶ 6.)

68.   On information and belief, each putative class member is a citizen of the state of California.  Thus, either the class members or Plaintiff himself may be treated as citizens of California for purposes of this removal.

---

[2] Should the Court or opposing counsel request additional information, evidence and/or calculations to demonstrate that this Action places at least $5m in controversy, the Defendant reserves the right to refine the methodologies used here and calculate the amount-in-controversy with greater precision, which may significantly increase the result.

Case No. _____

DEFENDANT SIEMENS INDUSTRY, INC.'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

69.     Since at least one plaintiff is a citizen of a different state than Defendant, the third requirement of CAFA jurisdiction is satisfied.  Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

**IV.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUPPLEMENTAL MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1367**

70.     As set forth above, this action is removable under 28 U.S.C. § 1332(d).

71.     To the extent this Court would not otherwise have jurisdiction over any claim asserted in the Complaint, it may exercise supplemental jurisdiction over such a claim pursuant to 28 U.S.C. § 1367.  *Thompson v. Target Corporation*, No. 16-839, 2016 WL 4119937, at *12 (C.D. Cal. Aug. 2, 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claims are therefore properly within the Court's supplemental jurisdiction.").

**V.    CONCLUSION**

72.     This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2).  This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

73.     In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have the opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

DATED:  July 1, 2022                          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Christopher W. Decker
        Christopher W. Decker
        Vi Applen

Attorneys for Defendant
SIEMENS INDUSTRY, INC.

20                    Case No. _____